The first case for today, which is Albert Woodfox v. Burl Kane, Warden, and we'll hear first from Mr. Stanley. Good morning, Your Honors. Rick Stanley here for the State Appellants. This is an appeal from the District Court's order on a habeas remedy in the Woodfox matter that has been before this Court several times before. First, the habeas grant was based on a defect in the manner of selection of the grand jury foreperson. The District Court found, and this is not in dispute, that this defect could be remedied by re-indictment and retrial. But the District Court went further, and that is the reason for this appeal. The District Court found that even where the habeas defect could be remedied by retrial, the State can be barred from a retrial on a finding of, quote, exceptional circumstances, close quote. We contend that this aspect of the District Court's order is clear error and ask the Court to reverse it. First, we submit that the District Court's order is contrary to the Supreme Court decision in Rose v. Mitchell. Rose recognized that habeas relief should be granted in grand juror selection, even if there was no error in the pettit jury or the trial itself. However, the Supreme Court reasoned that with this type of constitutional defect, habeas relief can be granted even absent a showing of actual prejudice to the defendant. The Court noted that there were costs associated with this approach, but went on to answer that argument as follows. A prisoner whose conviction is reversed by this Court need not go free if he is in fact guilty, for the State may indict and try him again by the procedure which conforms to the constitutional requirements, citing Hill v. Texas. We respectfully submit that the exceptional circumstances test, whatever it may be, cannot overcome Rose, which expressly anticipates that States will be afforded the right to reindict and retry a defendant who obtained habeas relief based on an error in grand jury selection. We also believe this Court has previously held that in Rideau v. Whitley. Second, even assuming that the exceptional circumstances test could apply in a Rose situation, the test has never been defined in this circuit to include any of the circumstances alleged here. The test as was recognized in Jones v. Cain states the test in dictum. In fact, the Court in Jones v. Cain reversed, as an abuse of discretion, Judge Berrigan's ruling to bar retrial. In finding that dictum, however, the Court in Jones cited Capps v. Sullivan, a Tenth Circuit case, and I think that case is instructive. In Capps, the Court stated that barring a new trial would be a permissible form of judgment in a habeas case. But the Court went on, and I quote, It is a power necessary to protect the purpose of habeas corpus jurisdiction when the error forming the basis for the relief cannot be corrected in further proceedings. That is not the case here. The grand jury error can be and has been corrected. Examples of habeas error that cannot be corrected are double jeopardy, a speedy trial violation, or a reversal based on a vindictive prosecution. But we have none of those facts in this case. Third, the circumstances cited by the District Court do not fall within any of the examples that other courts have found to be exceptional circumstances, and are not themselves exceptional. The first reason, age and health. All of us age, some of us will get sick, but we all remain answerable to the law. There's never been a court that has granted habeas discharge purely based on age or health. The second reason is the passage of time since the criminal act and the possibility that witnesses are unavailable. These are arguments that, however, first must be made to the State Court and exhausted there. If this is an argument about due process pre-indictment delay, it is an argument for the State Courts. As to unavailable witnesses and whether their testimony can be read to the jury, we are not aware of any confrontation clause problems. But again, those are arguments that must be exhausted in the State Court. The Supreme Court has been clear about that in the Pitches case. Third, the District Court said that we have a third bite here at the apple, and that that is something that we shouldn't have. No rule of law prohibits a third indictment. I am not aware of any case that says simply because a defendant is being brought to trial for a third time, unless it is double jeopardy, that there is a reason for discharging the defendant. Both of Mr. Woodfox's prior trials resulted in convictions. They were overturned only due to grand jury issues. Fourth, the District Court found that it could not trust the State to do its job. But we must recall that it was the State of Louisiana that overturned Woodfox's first conviction. Woodfox did not have to come to the federal courts for relief. Second, the grand jury issues that were the reasons for the reversal in both cases were due in part to Louisiana's flawed statutory scheme of selecting grand jurors. That scheme has been repealed and replaced. And under the Supreme Court's case in Hugler, there is absolutely no showing that the State processes that are available to Woodfox on retrial cannot and would not be fair. The fifth argument raised by the District Court truly has no place in this case. It relates to conditions of confinement. There is no Eighth Amendment claim in this case, and there was no basis for habeas relief based on any kind of Eighth Amendment argument. This, in fact, is the subject of another case pending in the District Court, which has not yet even proceeded to trial. In his motion opinion, Judge Smith correctly stated this is not a proper subject of inquiry in this habeas corpus proceeding. Fourth and finally, Your Honors, the result we seek here is fully supported by the doctrine of Younger v. Harris. This court in Kulski v. Watkins held that Younger is fully applicable in habeas cases. The Supreme Court has held that federal courts should only enjoin state criminal proceedings in truly exceptional circumstances. And the Supreme Court was careful there to define what it meant. It said this is not simply highly unusual facts. The Supreme Court said there must be a showing that the state courts are incapable of fully and fairly adjudicating the federal issues before them. There is no such showing in this case and no such finding in this case. In conclusion, the state has a strong and legitimate interest in the prosecution of this murder case. There is no statute of limitations for the crime of murder. The habeas defect in this case that was the result that we are talking about today can and has been remedied. There has been no showing whatsoever that the state courts on retrial cannot fairly adjudicate this case or that state remedies have been exhausted. We request that the district court order barring retrial should be reversed. Let me ask one question about the Mr. Woodfox is currently in custody under whose order? What court? He is currently in custody I think pursuant to state court order in West Feliciana Parish pursuant to a third indictment. All right. So to what extent then do we have to rule on how he got there, so to speak? I think that the how he got there and whether he's being held is mooted in part by Judge Smith's opinion. And if this court should agree with the state and reverse an order that retrial can proceed, that also would moot the Rule 23 issue. However, if this court were to affirm, Judge Brady, then the issue would be right because that would allow the district court's order for immediate discharge to be effective and there is pending before the Supreme Court a writ petition. Yes, and the status of that is it's just it's pending. It's set for the long conference. Oh, at the beginning. Well, it hasn't been set yet, but that's what we anticipate. It was actually set to be heard at the last conference and the Supreme Court bumped it and we anticipate it will be held at the long conference at the end of September. Okay. So it would only be in that instance, Judge, that there would be some issue about Mr. Woodfox's custody and whether or not he should remain held pending the Supreme Court's disposition of that writ. The state re-indicted him and was that after the district judge here entered the order that's on appeal now? No, ma'am. I was going to say it was before, wasn't it? It was. The state re-indicted him after this court declined to hear the case on bump. So faced with the fact that this court had said that the conviction was unconstitutional, the state wanted to proceed forthwith to get an indictment and to proceed with retrial. So, yes. You just took possession of him and moved him from wherever he was under the order that he was under to somewhere else under another order. That's correct. That was your plan, right? Well, what happened— That's a little strange. It was strange, Your Honor, and the state apologizes for the Rule 23 mistake, but the important thing being that he was never moved from the jurisdiction of Judge Brady. And at the first hearing before Judge Brady, after the transfer had occurred from Angola to West Feliciana, the state conceded on the record and admitted on the record that, A, Judge Brady had all of the jurisdiction. There's no attempt to moot out or deny him the jurisdiction, and that, B, if the court and Mr. Woodfox preferred, they would transfer him back to Angola. But I don't think anyone wanted that. So it was a practical mistake to move him without filing a Rule 23 motion, either in this court or the district court, but I don't think it has any bearing on the issues about retrial and appeal. Yeah, but I'm trying to figure out whether it's an issue that we have to rule on is the point. Right. I think it would only be an issue that would be relevant if you decide to affirm Judge Brady's order, because on the issuance of that mandate, there would be a question of custody. Okay. Thank you. If there are no other questions, I'll reserve the remainder of my time for rebuttal. Thank you, sir. Mr. Kendall. Good morning, if you'll please the court. My name is George Kendall. I'm here on behalf of Mr. Albert Woodfox. When this court issued its mandate after affirming the grant of habeas relief, it became the duty of the district court in this case to issue the remedy that law and justice require. When the district court focused on that question, he properly viewed this case as a total outlier. Unlike any other habeas case, he saw a collection of factors and circumstances that called for more than the usual remedy, which is a conditional writ. He saw, and we can't disaggregate these factors. We have to look at these in combination. He saw a very old case. The crime in this case happened 43 years ago. He saw that the state had not one but two prior opportunities to remove discrimination from the grand jury process and failed to do so. He saw troubling conduct by the state in the processing of this case. He saw a very sick and infirm old petitioner who has been harshly, harshly punished, albeit because of his alleged association with this homicide. He wasn't in the general part of the prison. Because of his alleged involvement in the Miller murder, he has been kept in solitary confinement-type conditions for more than four decades. Very unusual. Finally, the court looked and saw that all of the critical witnesses on this case, on both sides of the case, the prosecution side and the defense case, are now deceased. Given all these very unusual and extraordinary circumstances, the judge saw this case for what it was. This is not a case that calls for issuance of the usual conditional writ that allows retrial. But this was one of those rare cases that had been recognized in the law repeatedly that for justice and law to be satisfied, an unconditional writ should issue. And that is what Judge Brady did. And we ask that that order be affirmed by this court. First, let me explain why Judge Brady's ruling is correct. 2243 is the statutory basis for issuance of the remedy in habeas corpus cases. And as Chief Justice Rehnquist said in the Hilton case, federal courts sitting in habeas have the broadest, largest powers in issuing the scope and form of their judgments in habeas cases. This power includes, in the rare case, to issue rulings that bar retrial. This remedial power is not limited to claims that Mr. Stanley mentioned, like double jeopardy, where the relief of the finding of the violation itself bars a later trial proceeding. But it also applies to instances where exceptional circumstances exist such that the holding of a new trial would be unjust. Now, why did Judge Brady, in looking at these factors, conclude that it would be unjust for there to be a third trial? He found this collection of very unusual exceptional circumstances. First, he noted there were two prior opportunities to properly convict Mr. Woodfox. And this case is very old. And he noted, in looking at those prosecutions, that the first conviction was overturned because of discrimination in the grand jury process. And the state court judges, Mr. Stanley said, Director Dorn said, fix the problem and give this man a fair trial. That did not happen. They did not fix the problem. And it's important to note, because this is a court of habeas' equity, that Mr. Woodfox did everything he could to see that he was tried properly. Prior to the first trial, he filed a motion to strike the quash indictment because of discrimination in the grand jury process. It took him 19 years to get a remedy, to get that first conviction overturned. Prior to the second trial, he filed a motion seeking to quash the indictment and showed a strong prima facie case of discrimination in the grand jury process. The prosecution did not take that evidence seriously, even though those facts stated a prima facie case of discrimination. And unfortunately, the state courts ignored and did not apply the binding Supreme Court precedent, Castaneda v. Partita, and rejected the claim. And so it took another two decades for Mr. Woodfox to get relief on that claim. That is exceptional. For four decades, Mr. Woodfox has not been properly convicted of this crime. But Judge Brady found more. He saw instances of troubling state conduct, which gave him pause as to whether future proceeding could be fair. He saw the testimony of the former prosecutor in the second trial vouching for the credibility of the key prosecution witness who was deceased, who could not be cross-examined before that second jury, where there was a lot of impeachment evidence that the defense could not confront the witness on. That was a bad error. He saw in this very case, Mr. Stanley tries to say that, well, we just decided to move Mr. Woodfox from state custody to jail. That was done. Let me tell you why that happened. We filed a bail motion, as we were entitled to do, in early February of this year because we had prevailed in this court and we knew that the state was going to seek certiorari. This case was far from over. We filed a bail motion, and the bail motion was scheduled for March 2nd. And very shortly after a conference with Judge Brady, scheduling that hearing, in fact, two days after that conference, without any notice to the court, without any notice to us, as they were required to do, at least to the court under Rule 23, Mr. Woodfox was suddenly moved from state custody to the West Feliciana Parish Detention Center, and he was re-indicted. These factors gave Judge Brady pause, and we usually don't see this in cases, and it was troubling to him. Thirdly, Judge Brady found that the 40 years of 23-hour-a-day lockdown is extraordinary. We know of no other prisoner in Louisiana. We know of no other prisoner in the United States of America who's been subjected to this kind of continual solitary confinement circumstances. Justice Kennedy just in June said in an opinion, you spend 23-hours-a-day in an area the size of a normal parking lot. This has been highly prejudicial to Mr. Woodfox, and it's highly unusual. Judge Brady also probably focused on his age and ill health. Now, this is not a justification in and of itself to issue an unconditional writ, as Mr. Stanley is suggesting, looking at these sort of one at a time, but when you put this all together, Mr. Woodfox did everything he could to see that these errors did not take place, and now he's in the final chapter of his life. He doesn't have much more time left, and he shouldn't be made to run the gauntlet again. Finally, Judge Brady looked as he should have looked at the loss of witnesses in this case. Now, it's not unusual that there is a passage of time for a witness or two to no longer be available. We know that in trials that take place two decades later, that memories are going to dim, there will be some lost evidence, but that's not what we're talking about here. There were 15 prosecution witnesses the last time. Nine of those witnesses are deceased. There were 13 defense witnesses. Six of those witnesses are deceased. And what's important about this factor is that these were not just any witnesses. The most important witnesses for both sides now are no longer available. This is an eyewitness case. It's a case full of credibility, considerations, and issues for a jury to resolve. Is that not an issue in the first instance for the state court? It is. It was a proper factor for a federal habeas judge to consider in making this determination of what kind of writ ought issued. That's all that Judge Brady did. He did not speculate, as he shouldn't have speculated, but we submit that it was a proper factor for him to review because all the prisoner eyewitnesses who gave very conflicting testimony, they're all deceased. The heart and soul of the investigative team, deceased, Sheriff Daniels, Warden Henderson, Warden Hoyle. On the defense side, Mr. Woodfox would love the jury to see his alibi witnesses. He has told one consistent account for 43 years on this case, and now he has none of those witnesses to present before a jury to validate his account that he was not there, he was having breakfast at the time of this horrible offense. So what's unusual about these circumstances, it's both the number of unavailable witnesses and their importance, not just to one party or the other party, but to both parties. And so Judge Brady was correct when weighing this all together, that this truly shows a once-in-a-generation type case where there should not be further proceedings. And let me just say there were two other factors that he noted that we think are also very important. At bottom, the state's case has always been weak. It's a total eyewitness case from the sketchiest of witnesses. There was also evidence of rogue investigation activity by some members of the Angola High Command, which Powers v. Whitley makes very clear is something that a jury ought to know about if it's taking place. The fingerprint evidence that was collected impeaches the eyewitnesses of the state. It doesn't support them, it impeaches them. There is a fingerprint there. It's not Mr. Woodfox's, it's not the others who were charged with this offense. It's somebody's, but not theirs. That impeaches their case. And there's virtually no forensic evidence, none, that ties Mr. Woodfox to this crime. Further, there is a culpable innocence claim. Mr. Woodfox has consistently maintained he did not commit this crime. And we all know what Angola was like in 1972. It was a mess. There were trustees carrying guns. It wasn't the staff. It was a mess. There's no forensic evidence at all that links Mr. Woodfox to this. And there's very powerful impeachment evidence for the key state witnesses. So when you put this all together, not take it one at a time, but put this all together, these are very powerful factors and circumstances that 2243 compelled Judge Brady to consider. He considered those, and I believe for the first time in his career he said, this is an exceptional case that requires the strong medicine of the unconditional writ. And we would think that he did not commit an error of fact. He included factors and circumstances that are relevant. He applied the guiding law here. There's no mistake of law, no mistake of fact. The state has to show an abuse of discretion for this court to overturn that, and we believe that he is right on the merits. But there is surely not an abuse of discretion. And if there are no further questions, we would ask that the court affirm Judge Brady's order on this matter. If Mr. Woodfox has to be retried, are you all going to be there? We've had to be in four different courts, Your Honor, and there are two very good lawyers who are now prepared to represent him in state court. All right. And the second thing is if, A, the Supreme Court denies cert, who knows, but if they do, which I would agree with you, it's probably going to be soon, at that point, does the question of his current custody mood out? I mean, if we were to say Judge Brady didn't get it right, and if the Supreme Court denies cert, do we have to answer the question about the fact that he's now in the state jail rather than under the order of Judge Brady at Angola? Does that sort of mood out at that point? Well, the mandate, this court's mandate is issued, and with the denial of certiorari, that would conclude federal habeas proceedings. Right. And so then he's been indicted in the state court system. He's in jail in the state court system, in a parish jail. But, Your Honor, we would submit that was a premature indictment, and we have not said that that is a legal indictment, and these habeas proceedings were ongoing. It was done to, I think as Judge Brady indicated, to avoid the initial bail in federal court, and so our position is that that is not a legal indictment. Okay. But that issue has to be litigated first in the state court, I would think. Well, it's just— I mean, assuming, depending on what happens here in this case, but I would assume that the question of whether that's a legal indictment would have to go to the state court system, wouldn't it? It would be raised there, Your Honor. Yeah. Okay. That's what I need. Thank you. Thank you. Mr. Stanley. Thank you, Your Honor. To answer Judge King, I would agree that if the Supreme Court denied cert, that that would move the issue on the Rule 23. Yeah. So that would—only if the Supreme Court grants cert and this court were to affirm that the issue is, I think, live. In rebuttal, Mr. Kendall admitted that this was a horrible crime. Indeed, it was a horrible crime. Mr. Woodfox has been twice convicted of this crime. Those convictions were not reversed due to trial error, and Mr. Kendall's argument is properly made to a state court jury, not as a basis for the incredible remedy of discharge. The issue of confinement, as I mentioned, it's in another case right now. But even if Mr. Woodfox prevails in the other case on the question of confinement, there's no remedy in the 1983 action for him to be discharged. The remedy would be some sort of injunction about the conditions of confinement or damages or both. But under no circumstances would the remedy of discharge be justified even by conditions of confinement case in there. We talked about troubling conduct of the state prosecutor testifying and vouching for the witness, which I would agree was probably something that should not have been done. On the other hand, this court has held that that was not a basis for habeas relief. So therefore, I would agree or at least argue to you that it shouldn't be a basis for habeas discharge either. The rulings that bar retrial, that don't fall within the categories that I mentioned before, there are really only two. One is the Schuster case. It's a district court. I'm sorry, it's a Second Circuit case, which I didn't hear Mr. Kendall mention, although it's featured in their brief. But Judge Smith distinguished Schuster, and I think anyone who reads Schuster will find it distinguishable. In that case, all state remedies had been exhausted, and indeed the state processes had kept someone in prison for 22 years without bail for an offense that he couldn't have possibly been held that long otherwise. It is simply not on all fours with this case. The other case, the Morales case, is a district court case in the Second Circuit, which does look forward and say things like, well, we don't think this trial is going to be fair. We think that there's no reasonable juror that could convict this man. Well, we already have evidence in this record that reasonable jurors did convict this man. But moreover, in the Second Circuit after the Morales decision, in DeSimone, the Second Circuit was very clear that arguments like that have to be made to the state court first. There has to be an exhaustion of remedies in state court. So I'm not sure that Morales is even good law. The question of bail, the state court has heard the motion for bail and denied it. So that question has been raised in state court and is being litigated there as we speak. And the final point I wish to make is with respect to the witnesses that are now deceased, yes, that's unfortunate, but that does not make their testimony inadmissible. In Crawford, the Supreme Court recognized that as long as prior testimony has been subject to adequate cross-examination, it can be admitted in a subsequent case. And I presume that this case would be governed by Crawford and not by Roberts because this retrial is occurring post-Crawford. But at any rate, that does not make their testimony admissible. And further, that is not to say that there are other witnesses who cannot be called in a retrial who were not called in either of the prior two trials. There are still witnesses who are alive who may have knowledge of this event. We ask this court to recognize the important interest of the state of Louisiana in prosecuting this crime. And when exercising the habeas remedy, to allow room for the sovereignty of the state to prosecute this person for a third time for the heinous act of murdering Brent Miller. Thank you.